## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

REYNALDO MARTIN-GODINEZ,

      Petitioner,

v.                                  Case No. 3:21-cv-582-TJC-MCR

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

      Respondents.

_____

## ORDER

### I.   Status

Petitioner, an inmate of the Florida penal system, initiated this action by filing a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus (Doc. 1). Petitioner challenges a state court (Duval County, Florida) judgment of conviction for three counts of sexual battery on a person less than 12 years of age and one count of lewd and lascivious molestation. See id. at 1. Petitioner is serving a mandatory life term of incarceration. Respondents filed a Response (Doc. 10; Response) with exhibits (Docs. 10-1 to 10-20; Ex.). Petitioner filed a Reply (Doc. 12). This case is ripe for review.[1]

---

[1] "In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing." Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318 (11th Cir. 2016) (citing Chavez v. Sec'y Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th

## II.   <u>Governing Legal Principles</u>

### A. Standard Under AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. <u>See</u> <u>Ledford v. Warden, Ga. Diagnostic & Classification Prison</u>, 818 F.3d 600, 642 (11th Cir. 2016), <u>cert.</u> <u>denied</u>, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" <u>Id.</u> (quoting <u>Greene v. Fisher</u>, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. <u>See</u> <u>Marshall v. Sec'y Fla. Dep't of Corr.</u>, 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale for the state court's decision to qualify as an adjudication on the merits. <u>See</u> <u>Harrington v. Richter</u>, 562 U.S. 86, 100 (2011). When the state court's adjudication on the merits is unaccompanied by an explanation,

---

Cir. 2011)). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Id.</u> The Court finds that "further factual development" is unnecessary. <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003). Thus, an evidentiary hearing will not be conducted.

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." Id. § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not

3

mean the state court's contrary conclusion was unreasonable." Id. [at 102] (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. See, e.g., Mitchell v. Esparza, 540 U.S. 12, 18 (2003); Lockyer, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Williams v. Taylor, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations modified).

## B. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish ineffective assistance, a person must show that: (1) counsel's performance was outside the wide range of reasonable, professional assistance; and (2) counsel's deficient performance prejudiced the challenger in that there is a reasonable probability that the outcome of the proceeding would have been different absent counsel's deficient performance. Strickland, 466 U.S. at 687.

There is no "iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010). Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697.

Further, "[t]he question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, 562 U.S. at 105. As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010). "Reviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional assistance.'" Daniel v. Comm'r, Ala. Dep't of Corr., 822 F.3d 1248, 1262 (11th Cir. 2016) (quoting Strickland, 466 U.S. at 689). "When this presumption is

combined with § 2254(d), the result is double deference to the state court ruling on counsel's performance." Id. (citing Richter, 562 U.S. at 105); see also Evans v. Sec'y, Dep't of Corr., 703 F.3d 1316, 1333-35 (11th Cir. 2013) (en banc) (Jordan, J., concurring); Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004).

### III.   **Procedural History**

The State of Florida charged Petitioner by amended information with three counts of sexual battery on a person less than 12 years of age (Counts 1-3),[2] one count of lewd and lascivious molestation (Count 4), and one count of promoting a sexual performance (Count 5). Ex. A at 45. Petitioner proceeded to a jury trial, see Ex. B, at the conclusion of which the jury returned guilty verdicts on Counts 1, 3, and 4, and not guilty verdicts on Counts 2 and 5, Ex. A at 76-80. The trial court sentenced Petitioner to a mandatory term of natural life on both Counts 1 and 3, and 25 years on Count 4, with the sentences on Counts 3 and 4 to run concurrent with the sentence on Count 1. Id. at 90-92.

Petitioner filed a direct appeal, and he subsequently filed postconviction motions pursuant to Florida Rule of Criminal Procedure 3.850. Petitioner then filed the instant case raising five grounds for relief.

---

[2] The sexual conduct charged in each count was as follows: Petitioner placed his penis in or upon R.G.'s vagina (Count 1); Petitioner placed his mouth upon R.G.'s vagina (Count 2); and Petitioner digitally penetrated R.G.'s vagina (Count 3).

## IV.   <u>Analysis</u>

### A. Ground One

Petitioner argues that the trial court erred by denying his motion to suppress statements that he made to police when he did not have access to an appropriate interpreter. Doc. 1 at 7.

Prior to trial, Petitioner, through trial counsel, filed a motion to suppress the statements he made in his interview with police. Ex. A at 50-51. He argued that the <u>Miranda</u>[3] warnings and interrogation were conducted in Spanish, but Petitioner's native language is Mayan Mam, and he "was not able to understand his rights or the conversation." <u>Id.</u> The trial court held a hearing on the motion, during which it heard testimony from Petitioner and the detective who conducted the interview (Detective Nanette Lamb). <u>See</u> <u>id.</u> at 185-206. At the conclusion of the hearing, the trial judge denied the motion, explaining as follows:

> The Court actually reviewed the DVD [of the interview] multiple times carefully with the transcript, and after reviewing it – and of course hearing the Detective's testimony, it is clear to me that this defendant understood Spanish, understood what he was being told, understood what he was waiving. He had questions about the <u>Miranda</u> rights, but he asked them in Spanish and got a response in Spanish.
>
> So based on the totality of the circumstances, I have to agree with Judge Borello. I think this

---

[3] <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

> defendant does not necessarily need this Mam interpreter, but we will certainly provide it. That he freely and voluntarily waiving [sic] his <u>Miranda</u> rights with the full understanding of what he was doing, and agreed to speak with the Detective. So I will deny the Motion to Suppress.

<u>Id.</u> at 200-01.

On direct appeal, Petitioner argued that "the State did not meet its burden of showing that [Petitioner] knowingly and intelligently waived his right against self-incrimination and his right to counsel before speaking with Detective Lamb." Ex. C at 19. Petitioner contended that "the trial court erred because it focused too narrowly on whether [Petitioner] spoke any Spanish, and did not take the totality of the circumstances into account." <u>Id.</u> at 24-25. According to Petitioner, the trial court's limited colloquy about Petitioner's age, education, and family "did not include any abstract concepts and thus, gave the court no real indication of whether he could understand such concepts in Spanish, without a Mam translator to assist." <u>Id.</u> at 25. The state responded on the merits. <u>See</u> Ex. G. Petitioner filed a counseled reply brief. <u>See</u> Ex. H.

In a written opinion, the First District Court of Appeal affirmed the trial court's decision, reasoning, in pertinent part, as follows:

> The appellant is a native of Guatemala and primarily speaks a dialect of the Mayan language, Mayan Mam, along with some Spanish. The State filed sexual battery and lewd and lascivious molestation charges against the twenty-two-year-old appellant, claiming he molested his niece who was between eight

8

and nine years old at the time. After he was identified as a suspect, the appellant was detained and interviewed by a Spanish-speaking detective. At the outset of the interview, the appellant told the detective that he only spoke a little English, but he did speak Spanish. The detective asked the appellant several questions in Spanish about his background and reviewed his constitutional rights. The appellant was sufficiently able to answer the questions and voiced an understanding of his rights. The appellant signed a Miranda[] waiver form and was able to read the first line aloud to the detective. After affirmatively waiving his rights, the appellant agreed to speak with the detective and provided several incriminating statements.

The appellant later moved to suppress the statements, arguing that they were obtained in violation of his privilege against self-incrimination and his right to counsel because he did not understand his Miranda rights and the interview, which were conducted in Spanish instead of Mayan Mam. The appellant argued that his limited education further impeded his ability to understand his legal rights. The State responded that the appellant never conveyed that he could not understand Spanish, never asked for a Mayan Mam interpreter, and had agreed to talk with the detective after affirmatively waiving his Miranda rights. The trial court denied the motion to suppress upon the "totality of the circumstances," which included its review of the DVD and transcript of the interview and consideration of the testimony and argument at the suppression hearing.[FN] It found the appellant understood Spanish enough to freely and voluntarily waive his Miranda rights with a full understanding of what he was doing and he had agreed to speak with the detective.

[FN] The court also considered the observations of a previous judge who had presided over an earlier hearing on child

hearsay evidence, which the appellant does not challenge on appeal. The previous judge had denied the appellant's request to delay the proceedings in order to find a Mayan Mam interpreter. The previous judge personally observed that the appellant had a sufficient command of Spanish such that continuing the proceedings with a Spanish interpreter would not jeopardize his constitutional rights. While declining to delay the proceedings, defense counsel was allowed to continue to search for a Mayan Mam interpreter. One was eventually located and was present for the appellant's suppression hearing through the remainder of trial.

. . . .

The State carried the burden to prove the appellant waived his Miranda rights by a preponderance of the evidence. Balthazar v. State, 549 So. 2d 661, 662 (Fla. 1989). In order to waive Miranda rights, the waiver must be made "voluntarily, knowingly and intelligently." Murdock v. State, 115 So. 3d 1050, 1055 (Fla. 4th DCA 2013) (citations omitted). The burden of proving voluntariness is "heavier" when a defendant claims a language barrier, but the standard of proof remains the same. Balthazar, 549 So. 2d at 662. The appellant does not claim that his waiver was the product of intimidation, coercion, or deception. Therefore, the totality of the circumstances must show that his waiver was made with a full awareness of the rights he was abandoning and the consequences of the abandonment. Murdock, 115 So. 3d at 1055 (citing Louis v. State, 855 So. 2d 253, 255 (Fla. 4th DCA 2003)).

The trial judge's finding that the appellant understood Spanish well enough to freely and voluntarily waive his Miranda rights with a full understanding of what he was doing is supported by

competent, substantial evidence. The appellant was able to sufficiently answer the detective's background questions in Spanish, and he acknowledged he understood the rights he was waiving. The appellant argues that the trial judge failed to consider factors beyond his language barrier; however, her ruling was made upon consideration of the "totality of the circumstances." While the appellant did state he only had a second-grade education, there was no indication that he had anything but average intelligence. His answers to the detective's questions indicated he had a sufficient understanding of the judicial system. For example, when asked if he knew what a lawyer was, the appellant stated it was someone to advocate for him. After the appellant affirmatively waived his rights, the interview continued in Spanish wherein the appellant provided a detailed account of his actions against his niece. Accordingly, the trial judge appropriately denied the motion to suppress, allowing for the admission of the appellant's incriminating statements.

Ex. I at 4-5 (footnote omitted); Martin-Godinez v. State, 225 So. 3d 926, 927-28 (Fla. 1st DCA 2017).

The Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications. The transcript of the police interview reflects that Petitioner acknowledged at the beginning of the interview that he spoke Spanish, so Detective Lamb conducted the interview in Spanish. See Ex. F at 10. Detective Lamb reviewed Petitioner's rights with him, and Petitioner signed a waiver form. See id. at 13-14. He answered Detective Lamb's questions, and ultimately confessed to some of the charged conduct. See id. at 16-27. The First DCA acknowledged that the trial

court reviewed the DVD of the interview and based its ruling on the "totality of the circumstances." Upon thorough review of the record, the Court finds that the state court's adjudication of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law. Nor was the state court's adjudication based on an unreasonable determination of the facts given the evidence presented in the state court proceedings. As such, Ground One is denied.

**B. Ground Two**

Petitioner argues that his trial counsel was ineffective for failing to object to the video of the victim's interview with the Child Protection Team (CPT) being allowed in the jury room during deliberations. Doc. 1 at 10.

On August 21, 2018, Petitioner filed a pro se motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. See Ex. K at 1-11. He argued that his trial counsel was ineffective for failing to object to the video evidence of the victim's CPT interview being allowed in the jury room during deliberations. See id. at 2-5. On September 24, 2018, the trial court summarily denied his motion. See id. 18-22. On appeal, the First DCA reversed and remanded on this claim, finding in pertinent part:

> The trial court denied Martin-Godinez's claim regarding the CPT interview videotape, concluding that the video was entered into evidence and therefore it was proper to send it back into the jury room pursuant to Florida Rule of Criminal Procedure

3.400(a)(3). We disagree. "[V]ideotaped out-of-court interviews with child victims introduced into evidence under section 90.803(23)[, Florida Statutes,] shall not be allowed into the jury room during deliberations." Young v. State, 645 So. 2d 965, 967 (Fla. 1994). Trial counsel can be deemed ineffective for failing to object to a videotaped CPT interview being sent to the jury room during deliberations where this omission results in prejudice. See McLevy v. State, 849 So. 2d 431, 432 (Fla. 1st DCA 2003); see also Otero v. State, 169 So. 3d 231 (Fla. 2d DCA 2015).

Nonetheless, we hold that Martin-Godinez did not demonstrate an entitlement to an evidentiary hearing on this claim, because he did not make a sufficient allegation of prejudice.[] To prove ineffective assistance a defendant must allege (1) the specific acts or omissions of counsel which fell below a standard of reasonableness under prevailing professional norms and (2) that the defendant's case was prejudiced by these acts or omissions such that the outcome of the case would have been different. Strickland v. Washington, 466 U.S. 668, 690-92 (1984). The prejudice prong requires that the defendant demonstrate a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. See id. at 694. A defendant must allege sufficient facts to demonstrate "how the outcome would have been different had counsel acted otherwise" in order to merit an evidentiary hearing. Ragsdale v. State, 720 So. 2d 203, 208 (Fla. 1998). Regardless of whether counsel should have objected to the videotape being given to the jury, Martin-Godinez made an insufficient allegation of prejudice to overcome a summary denial of this claim.

Martin-Godinez did not allege that "but for counsel's errors, the result of the proceeding would have been different." Instead, he alleged that if counsel had objected, he would have received relief on direct appeal, where the harmless error standard

would have resulted in reversal.[] If counsel had done so, Martin-Godinez reasons, he would not have to prove prejudice under the considerably more difficult standard under <u>Strickland</u>.

We reject the argument that a defendant can demonstrate prejudice under <u>Strickland</u> by arguing that if counsel had objected, the defendant would have secured relief on direct appeal. First, it does not allege that the result of the proceeding would have been different, as <u>Strickland</u> requires. More importantly, it implies that, had counsel objected, the court would have erroneously overruled the objection, thus giving the defendant a ground for appeal. This argument does not demonstrate prejudice under <u>Strickland</u>. <u>See Carratelli v. State</u>, 961 So. 2d 312, 323 (Fla. 2007) (holding that "a defendant alleging that counsel was ineffective for failing to object or preserve a claim of reversible error in jury selection must demonstrate prejudice at the trial, not on appeal."); <u>Strobridge v. State</u>, 1 So. 3d 1240, 1242 (Fla. 4th DCA 2009) ("The prejudice in counsel's deficient performance [in failing to preserve error for appeal] is assessed based upon its effect on the results at trial, not on its effect on appeal."). Moreover, this implication runs contrary to well-settled law that an appellate court presumes that a trial court correctly applies the law. <u>See, e.g.</u>, <u>Doe v. Baptist Primary Care, Inc.</u>, 177 So. 3d 669, 673 (Fla. 1st DCA 2015) (noting that "the decision of the trial court enjoys a presumption of correctness and the burden falls to the appellant to demonstrate error"). Presumably, if counsel had made a proper objection, the court would have granted it, and the defendant would have had no appellate issue. As such, the defendant can only secure relief (or at least an evidentiary hearing) by alleging facts showing that the result of the proceeding would have been different but for counsel's errors.

Because Martin-Godinez's first claim is facially insufficient and not conclusively refuted by the record,

14

> we reverse and remand so that the postconviction court may strike the claim and provide sixty days to amend it.

Ex. N at 4 (citations modified); <u>Martin-Godinez v. State</u>, 290 So. 3d 144, 145-47 (Fla. 1st DCA 2020).

On remand, Petitioner filed an amended Rule 3.850 motion on February 7, 2020. <u>See</u> Ex. P at 125-30. He again argued that the video recording of the out-of-court interview with the child victim should not have been permitted in the jury room during deliberations, and his trial counsel was ineffective for failing to object. <u>See</u> <u>id.</u> at 126-29. The state filed a response. <u>See</u> <u>id.</u> at 150-58. The postconviction court again summarily denied this claim:

> Defendant asserts that videotaped interviews with child victims are not allowed in the jury room during deliberations, citing <u>Young v. State</u>, 645 So. 2d 965, 967 (Fla. 1994),[] and Florida Rule of Criminal Procedure 3.400(a)(4) and (d). He acknowledges the issue was raised on appeal but the appellate court found no fundamental error.[4] Therefore, he argues, counsel should have made a contemporaneous objection when the CPT . . . video and a laptop were provided to the jury during deliberations in his trial.
>
> The State raises the following persuasive arguments:

---

[4] Contrary to what the postconviction court stated, Petitioner did not raise this issue on direct appeal, nor did he say so in this amended Rule 3.850 motion. Instead, he argued: "Although the holdings in <u>Young</u> and <u>Barnes</u> were issues presented on direct appeal, the court found the error was not fundamental, therefore a contemporaneous objection to allowing the video in the jury room during deliberations was necessary to preserve the issue for direct appellate review." Ex. P at 127.

- Defendant's amended version of Ground 1 is almost identical to the version in his original Motion, which the First District Court of Appeal found was insufficient to establish prejudice. <u>Martin-Godinez</u>, 290 So. 3d at 146.

- In the CPT video, the child indicated that Defendant had used his tongue to touch her vagina (Count 2) and took pictures of her vagina while she was lying down (Count 5). However, her trial testimony was inconsistent regarding these counts; she said that she did not remember whether he put his mouth on her vagina and merely stated that he took pictures of her body with her phone.

- During the February 5, 2015, interview with Detective Lamb, Defendant denied committing the offenses charged in Counts 2 and 5, and he admitted the conduct charged in the other counts. The jury acquitted him of Counts 2 and 5, and convicted him of the other counts.

This Court concludes that the jury's acquittal of Defendant on Counts 2 and 5 demonstrates that it did not give unfair emphasis to the video statements. As the State argues, the jury accepted Defendant's admissions and denials and rejected the child's statements in the CPT video when her trial testimony was inconsistent. Therefore, Defendant cannot establish that he was prejudiced by counsel's failure to object when the video was included in the evidence sent to the jury during deliberations.

<u>Id.</u> at 160-61 (record citations and footnote omitted). Petitioner appealed, and the First DCA per curiam affirmed the postconviction court's denial of his amended Rule 3.850 motion without issuing a written opinion. Ex. S.

16

The Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications. Even assuming Petitioner's trial counsel was ineffective for failing to object to the jury having the video evidence of the victim's CPT interview during deliberations, Petitioner has not shown prejudice. He has not shown a reasonable probability that the outcome of the trial would have been different but for counsel's alleged ineffectiveness. Thus, upon thorough review of the record, the Court finds that the state court's adjudication of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law. Nor was the state court's adjudication based on an unreasonable determination of the facts given the evidence presented in the state court proceedings. As such, Ground Two is denied.

## C. Grounds Three and Four

Petitioner argues that his trial counsel was ineffective for failing to object to the admission of the child victim's hearsay statement. Doc. 1 at 12, 15. He contends that the statement was repetitive and should have been subjected to the balancing test in Florida Statute § 90.403, and that the statement lacked reliability (relying on Florida Statute § 9.803(23)). Id. He contends that at trial, the CPT interviewer testified that the victim "was hesitant" during the interview when asked whether she could tell the truth and that this information was not elicited at the pretrial hearing on the matter. Ex. K at 7. Thus,

17

Petitioner argues that "[t]his assessment by the state's expert witness [(the CPT interviewer)] raises serious question[s] about the veracity of the CPT video interview/hearsay evidence," and his counsel should have objected or filed a motion for rehearing. Id.

Prior to trial, the state filed a notice of intent to introduce child hearsay evidence in the form of the CPT interview. Ex. A at 31. The trial court held a hearing, during which it heard testimony from the CPT interviewer and argument of counsel. Ex. A at 105-58. Petitioner's trial counsel called into question the reliability of the child-victim's statement; and argued that it was unclear whether the child-victim understood the difference between the truth and a lie, her statement was inconsistent with other evidence, she had a motive to fabricate, portions of the interview were suggestive and influenced by the interviewer, the victim was vague regarding the timeliness of events, and that regardless of all the arguments, the statement is still subject to "a 403 balancing test" (i.e., weighing the probative value against the danger of unfair prejudice to the defendant, including the possibility of confusing the issues, misleading the jury, or presenting needless cumulative evidence). Id. at 132-41. Specifically, she argued that the trial "court must weigh the reliability and the probative value of a child victim's hearsay statement against the danger that the statement will unfairly prejudice the defendant and confuse the issues at

trial, mislead the jury, or result in the presentation of needlessly cumulative

evidence." Ex. A at 140. Counsel continued:

> And, basically, Your Honor, this is a 403
> balancing test which still applies to this evidence, and
> I just ask that in that context that we're dealing with
> a hearsay statement that would not otherwise be
> admissible. And in that statement there is a danger
> that it - - there is - - that there be evidence introduced
> that is unreliable, which is why hearsay is not
> permitted, so I would just ask that Your Honor apply
> that balancing test because knowing that the witness
> in this situation, this child, is going to come to court
> and testify and be subject to cross-examination, and is
> a perfectly appropriate way for a witness to be
> questioned about what happened and for the state to
> provide evidence, so I would ask that Your Honor
> consider that as well.

Id. at 140-41.

Following the hearing, the trial court reviewed the video of the interview,

and orally pronounced its findings at a subsequent pretrial hearing:

> THE COURT: All right. As a bottom line
> the Court does - - is going to allow the child
> hearsay in this case. I have reviewed as I said
> the videotape as well as the evidence produced
> at the hearing and considered the arguments of
> both counsel under Florida statute 90.803 sub-
> section 23.
>
> I do find as a result of that hearing that
> the time, content and circumstances of the
> statement provides sufficient safeguards of
> reliability. I have considered the mental and
> physical age and maturity of the child, the
> nature and duration of the abuse or offense, the
> relationship of the child to the offender, the

reliability of the assertion, the reliability of child victim and several other factors which I will discuss in just a moment.

Specifically I find that the interview was conducted - - of the child was conducted appropriately, that there is no evidence that the child was coached in any manner, that the statements the child made concerning the incidents in question were spontaneously made by her and not as a result of any suggestiveness.

The child used appropriate language in describing the events and the parts of the body, both hers and the offender that are in question, that the child specifically knows the difference between a truth and a lie, that her answers were not vague, that she had a specific recollection of the events that occurred both as to the time of the events, the number of events and the location of the events.

Specifically the child also described a picture or video taken by the defendant on the phone in addition to the actual events that - - where she described on a number of occasions that her uncle who she named specifically had touched her which she described as her private part and the video has the language I don't feel the need to repeat it here today.

I specifically find that any inconsistencies that may have occurred in her testimony on the video are minor and they do not vitiate the reliability and trustworthiness of her overall statements. . . .

Again as to the location she was able to describe times, dates and locations, bathroom, bedroom. All right. For those reasons as I said the Court will overrule the objection to the

> admissibility of the child hearsay statements,
> and I believe the state had filed a notice and will
> allow those statements to go forward.

Ex. A at 167-70.

Defense counsel subsequently filed a motion for rehearing, arguing that

Petitioner did not understand what was happening during the hearing because

he was provided with a Spanish interpreter, but his native language is Mayan

Mam. Ex. A at 40. The trial court heard argument at a pretrial hearing, during

which defense counsel acknowledged that she would not have done anything

differently at the prior hearing on the state's notice of intent to introduce the

child hearsay statements even if a Mam interpreter had been present:

> THE COURT: And, Ms. Zerbe, is there anything
> different that you would have done in your
> presentation of the evidence at the hearing had you
> had a Mam interpreter at that time to your
> knowledge?
>
> MS. ZERBE: To my knowledge, no. The only thing I
> can speak of is the communication with my client
> before that hearing was basically none, and it was
> impossible for me to tell if that was because he didn't
> understand or because he wasn't communicating with
> me very much.

Id. at 180. The state argued:

> Your Honor, at the hearing that was conducted
> in October, you did a colloquy with the defendant to
> determine whether or not he had the ability to
> understand the Spanish interpreter. Based on that
> colloquy, you made findings that he was able to
> understand what was going on at that hearing,

> perhaps not the technical legal arguments that were being made, but as to the form and substance of what was going on. The state requests that you rely on that colloquy at that time.

<u>Id.</u> at 180-81. The trial court denied the motion for rehearing. <u>Id.</u> at 181-82.

During the trial, the videotape of the victim's CPT interview was played for the jury and admitted into evidence. <u>See</u> Ex. B at 202-53.

In Petitioner's original Rule 3.850 motion, he raised the same two claims regarding the child hearsay statements that he raises in the Petition as Grounds Three and Four. <u>See</u> Ex. K at 5-8. The postconviction court summarily denied the claims:

> In Grounds Two and Three, Defendant alleges counsel was ineffective for failing to object to the child hearsay evidence on the basis of prejudice and on the basis of reliability. At issue is Section 90.803(23) titled HEARSAY EXCEPTION; STATEMENT OF CHILD VICTIM OF SEXUAL ABUSE OR SEXUAL OFFENSE AGAINST A CHILD which provides:

> > (a) Unless the source of information or the method or circumstances by which the statement is reported indicates a lack of trustworthiness, an out-of-court statement made-by a child victim with a physical, mental, emotional, or developmental age of 11 or less describing any act of child abuse or neglect, sexual abuse, or any other offense involving an unlawful sexual act, contact, intrusion, or penetration performed in the presence of, with, by, or on the declarant child, not otherwise admissible, is admissible in evidence in any civil or criminal proceeding if:

1. The court finds in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient safeguards of reliability. In making its determination, the court may consider the mental and physical age and maturity of the child, the nature and duration of the abuse or offense, the relationship of the child to the offender, the reliability of the assertion, the reliability of the child victim, and any other factor deemed appropriate; and

2. The child either:

a. Testifies; or

b. Is unavailable as a witness, provided that there is other corroborative evidence of the abuse or offense. Unavailability shall include a finding by the court that the child's participation in the trial or proceeding would result in a substantial likelihood of severe emotional or mental harm, in addition to findings pursuant to s. 90.804(1).

For a hearsay statement to be admitted under this section, the statement must meet two specific reliability requirements: (1) the *source* of the information through which the statement was reported *must indicate trustworthiness*; and (2) the *time, content, and circumstances* of the statement must reflect that the statement *provides sufficient safeguards of reliability*. State v. Townsend, 635 So. 2d 949, 954 (Fla. 1994). The court is required, in a hearing conducted outside the presence of the jury, to determine whether a hearsay statement is trustworthy and reliable by examining the "time, content, and circumstances" of the statement. Specifically, in examining the time, content, and circumstances of the hearsay statement, the court may consider the mental and physical age and maturity of the child, the nature and duration of the abuse or offense, the relationship of the child to the offender, the reliability of the assertion, the reliability of the

child victim, and any other factor deemed appropriate. § 90.803(23)(a)(l). Other factors may include, but are not limited to, a consideration of the statement's spontaneity; whether the statement was made at the first available opportunity following the alleged incident; whether the statement was elicited in response to questions from adults; the mental state of the child when the abuse was reported; whether the statement consisted of a child-like description of the act; whether the child used terminology unexpected of a child of similar age; the motive or lack thereof to fabricate the statement; the ability of the child to distinguish between reality and fantasy; the vagueness of the accusations; the possibility of any improper influence on the child by participants involved in a domestic dispute; and contradictions in the accusation. <u>Townsend</u>, 635 So. 2d at 957-58.

In the instant case the state filed a notice of hearsay. After a hearing, the Court allowed the hearsay testimony to be admitted in evidence pursuant to Florida statutes. The Defense requested a Rehearing which was denied by the Court. At trial the Defense renewed her objection thus preserving this issue for appeal.

Ex. K at 19-21 (record citations omitted). While not explicitly stated, it appears the postconviction court found that trial counsel was not deficient in the manner Petitioner suggests. Petitioner appealed the denial of his Rule 3.850 motion, and the First DCA affirmed the denial of these claims without comment. Ex. N at 2 n.1 ("We affirm the denial of Grounds Two through Four of Martin-Godinez's motion without further comment.").

The Court addresses these claims in accordance with the deferential standard for federal court review of state court adjudications. Even assuming

deficient performance, Petitioner has not shown prejudice. He fails to show that a reasonable probability exists that, but for counsel's alleged deficiency, the outcome of his trial would have been different. Upon thorough review of the record, the Court finds that the state court's adjudication of these claims was neither contrary to, nor an unreasonable application of, clearly established federal law. Nor was the state court's adjudication based on an unreasonable determination of the facts given the evidence presented in the state court proceedings. As such, Grounds Three and Four are denied.

### D. Ground Five

Petitioner argues that his trial counsel was ineffective for failing to follow-up on a motion for statement of particulars that was filed to narrow the alleged time period of the charged crimes. Doc. 1 at 17.

The information and amended information charged Petitioner with various sexual crimes against a minor spanning from June 13, 2013 to February 2, 2015. Ex. A at 17, 45. On March 10, 2015, Petitioner's trial counsel filed a motion for statement of particulars requesting the State "file a written statement of particulars with the Court specifying as definitely as possible the place, date and time of the offense(s) charged in the Information(s)." Id. at 26. It does not appear from the record that the trial court ever ruled on this motion.

Petitioner then raised this claim in his original Rule 3.850 motion. Ex. K at 8-9. The state court summarily denied it:

In Ground Four, Defendant alleges counsel was ineffective for failing to follow up on a motion for statement of particulars. The defendant made a motion for statement of particular. The state filed an information charging the period of time for the commission of the offense. A defendant is not necessarily entitled to a bill of particulars absent showing of lack of notice, prejudice, surprise or inability to prepare adequate defense[.] <u>Harrison v. State</u>, 557 So.2d 151 (Fla. 4th DCA 1990)[.] In the instant case, the defendant has the benefit of the liberal discovery afforded under Florida Rules of Criminal Procedure, Rule 3.220. Moreover, the defense had the opportunity to take discovery depositions of the State witnesses. Unlike many jurisdictions, discovery depositions are permitted in criminal cases in Florida; this defendant has the benefit of liberal discovery including the option of taking discovery depositions. This extensive and liberal pre-trial discovery tends to obviate the need for a statement of particulars. <u>See</u>[] <u>United States v. Bin Laden</u>, 92 F. Supp. 2d 225 (S.D.N.Y. 2000). The case law is clear that the state would have a right to amend the information or to amend the statement of particulars. <u>Holland v. State</u>, 359 So. 2d 28 ([Fla.] 3rd DCA 1978) (amendment of information and bill of particulars during trial with reference to date of death of victim was not error); <u>Young v. State</u>, 632 So. 2d 245 ([Fla.] 3rd DCA 1994); <u>Rosser v. State</u>, 658 So. 2d 175 ([Fla.] 3rd DCA 1995) (the State may substantively amend its charging document, even over the objection of the defendant, unless there is a showing of prejudice to the substantial rights of the defendant); <u>Taylor v. State</u>, 401 So. 2d 812 ([Fla.] 5th DCA 1981), <u>approved</u> 444 So.2d 931 (In prosecution for first-degree murder and attempted first-degree murder, trial court did not err in allowing amendment to statement of particulars to permit prosecution to permit addition of year and to add ten hours to period of time in which deaths were alleged to have occurred.). Thus, any failure by counsel

to follow up on the statement of particulars had no impact in the instant case.

Thus, the Defendant has failed to show that counsel erred or that there is a reasonable probability that had counsel acted as the Defendant suggests [s]he should have that the outcome would have been any different. Accordingly, this Court finds the Defendant has not established error on the part of counsel that prejudiced his case. <u>Strickland</u>, 446 U.S. 668.

Ex. K at 21-22. Petitioner appealed, and the First DCA affirmed the denial of these claims without comment. Ex. N at 2 n.1 ("We affirm the denial of Grounds Two through Four of Martin-Godinez's motion without further comment.").

The Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications. In cases involving child molestation and sexual abuse, Florida law recognizes "there will often be vagueness with respect to the actual dates in which the crimes occur[]." <u>Ramos v. State</u>, 75 So. 3d 1277, 1283 (Fla. 4th DCA 2011) (citing <u>Gamble v. State</u>, 870 So. 2d 110 (Fla. 2d DCA 2003)). Considering the record, along with the evidence presented including Petitioner's confession, even assuming trial counsel was ineffective for failing to ensure this motion was ruled upon, Petitioner has not shown prejudice. He has not shown that a reasonable probability exists that the outcome of his trial would have been different had counsel followed up to obtain a ruling on this motion. Therefore, upon thorough review of the record, the Court finds that the state court's adjudication of this claim was neither contrary

to, nor an unreasonable application of, clearly established federal law. Nor was the state court's adjudication based on an unreasonable determination of the facts given the evidence presented in the state court proceedings. As such, Ground Five is denied.

Accordingly, it is

**ORDERED**:

1.      The Petition (Doc. 1) is **DENIED**, and this case is **DISMISSED with prejudice**.

2.      If Petitioner appeals, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[5]

---

[5] The Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.

3.     The **Clerk** shall enter judgment dismissing this case with prejudice, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 6th day of August, 2024.



TIMOTHY J. CORRIGAN
United States District Judge

JAX-3 7/22
c:
Reynaldo Martin-Godinez, #J56899
Counsel of Record